CADWALADER, WICKERSHAM & TAFT LLP
Ingrid Bagby, Esq.
Christopher J. Updike, Esq.
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

- and -

John Thompson, Esq.
700 Sixth Street, N.W.
Washington, D.C.  20001
Telephone:  (202) 862-2200
Facsimile:  (202) 862-2400

*Proposed Attorneys for the*
*Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                :

In re:                            :          **Chapter 11**
                                :

**AMSTERDAM HOUSE CONTINUING CARE** :      **Case No. 14-73348**
**RETIREMENT COMMUNITY, INC.,**[1]    :
                                :

           Debtor.         :
-------------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO**
**USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION,**
**(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

          Amsterdam House Continuing Care Retirement Community, Inc., the debtor and

debtor in possession in the above-captioned case (the "Debtor"), respectfully represents as

follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 1764.  The Debtor's mailing
address is 300 East Overlook, Port Washington, New York 11050.

## BANKRUPTCY RULE 4001 CONCISE STATEMENT

1.       The following is a concise statement of the relief requested as required by rule 4001(b)(1)(B) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

2.       By this motion (the "<u>Motion</u>"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and rule 4001-5 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "<u>Local Rules</u>"), the Debtor respectfully requests entry of an interim order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Interim Order</u>"), and, as applicable, a final order (the "<u>Final Order</u>") (i) authorizing the Debtor to use "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>") in accordance with the cash collateral budget attached as **<u>Schedule A</u>** to the Interim Order (the "<u>Cash Collateral Budget</u>"); (ii) providing adequate protection, as set forth below, to UMB Bank, n.a., as successor indenture trustee for certain revenue bonds described more fully herein (the "<u>2007 Bond Trustee</u>"); (iii) scheduling a hearing (the "<u>Final Hearing</u>"), pursuant to Bankruptcy Rule 4001(b), to consider entry of the Final Order; and (iv) granting related relief.

3.       The Cash Collateral Budget reflects the Debtor's anticipated revenues and expenses for the period covered therein.  The expenses reflected in the Cash Collateral Budget primarily represent amounts necessary to continue the Debtor's high quality of care, to protect residents, and to preserve existing standards of health and human services during the pendency of the Debtor's chapter 11 case (the "<u>Chapter 11 Case</u>").  The Debtor will use the Cash Collateral to fund operating expenses and professional fees, as well as for purposes of insurance, taxes, and other ordinary course costs and expenses related to the Debtor's operations.  The Debtor believes that the Cash Collateral Budget will be adequate (inclusive of professional fees and

disbursements), considering all available assets, to pay all administrative expenses due or accruing during the period covered therein.

4.      The Debtor seeks authorization to use the Cash Collateral in accordance with the following terms:

a.      <u>Authorization to Use Cash Collateral</u>.   Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004, the Debtor shall be authorized to use Cash Collateral solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget; <u>provided</u>, <u>however</u>, that the Debtor shall have authority to use Cash Collateral in excess of the amounts set forth in the Cash Collateral Budget to the extent such a variance does not constitute a Termination Event (as defined in paragraph 14(i) of the Interim Order) (Interim Order, at ¶2).

b.      <u>Duration</u>.   The Debtor's authorization to use Cash Collateral shall last until the earlier of (i) a Termination Event (as defined in paragraphs 14 or 15 of the Interim Order) or (ii) the last day included in the Cash Collateral Budget (Interim Order, at ¶2).

c.      <u>Adequate Protection</u>.   The Debtor shall provide the 2007 Bond Trustee, which is the only entity that currently holds an interest in the Cash Collateral, with the following forms of adequate protection (collectively, the "<u>Adequate Protection</u>") for any diminution in the value of the Cash Collateral and the other Prepetition Bond Collateral (as defined below) resulting from the Debtor's use thereof after the Petition Date ("<u>Diminution</u>"):

i.      <u>Replacement Lien</u>: The 2007 Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "<u>Replacement Lien</u>") in (i) all assets of the Debtor existing on or after the Petition Date (as defined below) of the same type as the Prepetition Bond Collateral (as defined below), together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability, and priority of the liens and security interests of the 2007 Bond Trustee as of the Petition Date (the "<u>Postpetition Bond Collateral</u>"); and (ii) all other assets of the Debtor of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, together with all proceeds, rents, products, and profits thereof, exclusive of causes of action under chapter 5 of the Bankruptcy Code and proceeds thereof (the "<u>Supplemental Collateral</u>" and, collectively with the Postpetition Bond Collateral, the "<u>Collateral</u>") (Interim Order, at ¶7).

ii.   Status of Replacement Lien.  The Replacement Lien shall be in addition to all other rights of the 2007 Bond Trustee, including the 2007 Bond Trustee's liens and security interests in the Prepetition Bond Collateral.  The Replacement Lien shall not be subject or subordinate to (i) any liens arising after the Petition Date except for any liens or security interests in favor of any federal, state, municipal, or other government unit, commission, board, or court for any tax liability of the Debtor, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, and a tax of a kind specified in section 507(a)(8) of the Bankruptcy Code, or (ii) any intercompany or affiliate liens of the Debtor, or subordinated to or made pari passu with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise (Interim Order, at ¶8).

iii.  Superpriority Claim.  As additional adequate protection for any Diminution, the 2007 Bond Trustee shall have a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code, to the extent applicable, with recourse to and payable from any and all assets of the Debtor's estate, including but not limited to rights of the Debtor, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual that for any reason cannot be made the subject of the Replacement Lien (the "Secured Party Superpriority Claim").  The Secured Party Superpriority Claim shall be subject only to prior valid and perfected liens existing on the Petition Date and the Carve-Out (as defined in paragraph 19 of the Interim Order) and shall have priority over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (Interim Order, at ¶10).

iv.   Financial Information.  The Debtor shall allow the 2007 Bond Trustee and its professionals and designees reasonable access, during normal business hours and on not less than 24 hours' notice, to the premises of the Debtor in order to conduct appraisals, analyses and/or audits of the Prepetition Bond Collateral (as

defined below) and the Collateral (as defined below), and shall otherwise reasonably cooperate in providing any other financial information reasonably requested by the 2007 Bond Trustee for this purpose. From and after the entry of the Interim Order, the Debtor shall provide to the 2007 Bond Trustee once each week (commencing with the second week after the Petition Date), a weekly report certified by the Debtor's chief financial officer and in the same form as the Cash Collateral Budget indicating all receipts received and disbursements made by the Debtor in the week ending the prior Friday compared to the Cash Collateral Budget and detailing any variances of more than 10% and at least $10,000 from the expenditures and receipts in the Cash Collateral Budget. The Debtor and its professionals shall be available once each week (subject to reasonable scheduling conflicts) for a telephonic conference call with the 2007 Bond Trustee to discuss the status of the Debtor's proposed plan of reorganization (the "Plan of Reorganization"), the results of operations, and other matters pertaining to the Debtor and the Chapter 11 Case. The Debtor shall provide to the 2007 Bond Trustee such other reports and information as the 2007 Bond Trustee may reasonably request from time to time (Interim Order, at ¶12).

   v.   Compliance With Bond Documents. The Debtor shall comply with those terms and provisions of the Bond Documents (as defined below) set forth on Schedule I attached to the Interim Order and incorporated therein. The requirements of the Interim Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents (defined below) set forth on Schedule I attached to the Interim Order (Interim Order, at ¶13).

   d.   Effectiveness as of Petition Date. The rights and obligations of the parties under the Interim Order shall be effective and enforceable as of the Petition Date (Interim Order, at ¶28).

The foregoing is only a summary. The terms of the Debtor's use of the Cash Collateral are set forth in detail in the attached Interim Order. In the event of any inconsistency between the above summary and the Interim Order, the terms of the Interim Order shall control. Interested parties should review the Interim Order for a complete and accurate understanding.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157(b) and 1334.   This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtor is continuing in possession of its property and management of its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7.      The Debtor, d/b/a The Amsterdam at Harborside, operates Nassau County's first and only continuing care retirement community licensed under Article 46 of the New York Public Health Law, which provides residents with independent living units, enriched housing and memory support services, comprehensive licensed skilled nursing care, and related health, social, and quality of life programs and services.

8.      A more detailed description of the Debtor's business and capital structure, and the circumstances leading to the chapter 11 filing is contained in the Declaration of James Davis In Support of the Chapter 11 Petition and First Day Motions (the "Davis Declaration")[2] filed concurrently herewith and incorporated by reference hereto.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Davis Declaration or in the Interim Order, as applicable.

## FACTS SPECIFIC TO RELIEF REQUESTED

**I.  The Debtor's Secured Bond Obligations**

9.  The Debtor is obligated to the 2007 Bond Trustee for the benefit of the beneficial holders of the tax-exempt Bonds (as defined below) authorized and issued by the Nassau County Industrial Development Agency (the "Issuer") for the benefit of the Debtor.

10.  The Issuer issued its (i) $167,895,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2007A (the "Series A Bonds"), (ii) $8,500,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Adjustable Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2007B (the "Series B Bonds"), (iii) $95,100,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Variable Rate Demand Revenue Bonds (Amsterdam at Harborside Project) Series 2007C (the "Series C Bonds") and (iv) $24,900,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Variable Rate Demand Revenue Bonds (Amsterdam at Harborside Project) Series 2007D (the "Series D Bonds" and collectively with the Series A Bonds, the Series B Bonds, and the Series C Bonds, the "Bonds") pursuant to that certain Indenture of Trust (the "2007 Indenture") dated as of December 1, 2007, between the Issuer and the 2007 Bond Trustee.

11.  Proceeds from the sale of the Bonds were loaned to the Debtor pursuant to the Installment Sale Agreement, dated as of December 1, 2007 (the "Installment Sale Agreement"), between the Issuer and the Debtor, and were used by the Debtor to acquire Harborside.

12.  The 2007 Indenture established various funds to be held by the 2007 Bond Trustee, including a "Debt Service Reserve Fund" and an "Entrance Fee Fund" (as each term is

defined in the 2007 Indenture) (the Debt Service Reserve Fund and the Entrance Fee Fund, collectively, the "Bond Trustee Funds").[3]   As of the Petition Date, the aggregate balance of the Debt Service Reserve Fund was approximately $7,905,905 million, and the balance of the Entrance Fee Fund was approximately $4,445,874 million.  The Bond Trustee Funds are held in trust for the benefit of the Bondholders, and the 2007 Bond Trustee is entitled to use the Bond Trustee Funds in accordance with the terms of the Bond Documents (as defined below).

13.    As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds are as follows (collectively, the "Bond Claim"):

(i)    Unpaid principal on the Bonds in the amount of $220,570,000;

(ii)    Accrued but unpaid interest on the Bonds in the amount of $1,696,997 as of July 22, 2014; and

(iii)    unliquidated, accrued and unpaid fees and expenses of the 2007 Bond Trustee and its professionals incurred through the Petition Date.

## II.    Security for the Debtor's Bond Obligations

14.    The Debtor has granted the 2007 Bond Trustee mortgage and other liens on certain real and personal property pursuant to:  (i) an Acquisition Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 1, 2007, (ii) a Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 1, 2007, and (iii) a Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 1, 2007 (collectively, the "Mortgages" and together with the 2007 Indenture, the Installment Sale Agreement and any other document or agreement delivered as security for, or in respect to, the Bonds or the Debtor's obligations under any of such documents, collectively the "Bond Documents.").   The Debtor also executed a Guaranty, dated

---

[3] For the avoidance of doubt, the Bond Trustee Funds do not include the Operating Reserve Fund as that term is defined in the 2007 Indenture.

as of December 1, 2007, for the benefit of the 2007 Bond Trustee to guaranty the payment of amounts owing on the Bonds. Pursuant to these grants, and subject only to the lien on the Debtor's real property securing the Debtor's obligations under that certain Payment in Lieu of Taxes Agreement, dated December 1, 2007, between the Debtor and the Issuer, the 2007 Bond Trustee holds first priority liens and security interests in substantially all of the Debtor's real and personal property as security for its obligations associated with the Bonds including, but not limited to, revenues generated from the operations of Harborside (the "Revenues" and together with the other collateral described in the Bond Documents, the "Prepetition Bond Collateral").

**III.    Need for Use of Cash Collateral**

15.    Use of the Cash Collateral is critical to the Debtor's ability to fund its postpetition operations in a manner that will permit Harborside to continue to provide, amongst its other services, competent nursing care and enriched housing services. Without immediate access to the Cash Collateral, the Debtor will suffer immediate and irreparable harm, as it will be unable to provide for the safety or care of its residents; repay entrance fee refund obligations to the residents; or obtain goods and services needed to carry on its operations during the Chapter 11 Case.

**IV.    The 2007 Bond Trustee's Consent to the Debtor's Use of Cash Collateral**

16.    The 2007 Bond Trustee consents to the Debtor's use of the Cash Collateral, subject to the terms and conditions set forth in the Interim Order. Specifically, as a condition to consenting to the Debtor's use of its Cash Collateral, the 2007 Bond Trustee has agreed to the attached form of Interim Order, which governs, among other things, the use of deposits held in the Entrance Fee Fund. The attached form of Interim Order reflects the terms of the parties' agreement on Cash Collateral use, without which the 2007 Bond Trustee would not have consented to the Debtor's use of Cash Collateral.

**V.    Agreement Regarding Use of Funds in Entrance Fee Fund**

           17.    Under the Interim Order (Interim Order, at ¶3), and with the 2007 Bond Trustee's consent, the Debtor is authorized to access funds in an aggregate amount not to exceed $2,220,000 from the Entrance Fee Fund in order to satisfy any obligation of the Debtor to pay resident refunds (the "Refunds") that become due and owing during the Chapter 11 Case and that are required to be paid pursuant to any residency agreements (each, a "Residency Agreement") with the residents of Harborside, provided that such authorization shall be effective only after the Debtor has expended $2,350,000 from its operating revenues generated during the Chapter 11 Case and/or from funds held in its operating account to pay Refunds during the Chapter 11 Case. Any funds advanced from the Entrance Fee Fund as contemplated by this paragraph shall be made pursuant to an Escrow Fee Fund Advance Agreement to be entered into between the Debtors and the Bond Trustee and which shall be subject to approval by the Court. Once the aggregate amount of Refunds paid from the Entrance Fee Fund during the Chapter 11 Case equals or exceeds $2,220,000, the Debtor may pay any additional Refunds that become due and payable during the Chapter 11 Case from the Entrance Fee Fund only with the consent of the 2007 Bond Trustee, which consent is in the sole and absolute discretion of the 2007 Bond Trustee. During the Chapter 11 Case, the Debtor shall hold in an escrow account (the "New Entrance Fee Escrow Account") all entrance fees ("New Entrance Fees") it receives under any Residency Agreement entered into on or after June 1, 2014. The Debtor's interest in the New Entrance Fee Escrow Account and the funds therein shall be subject to a first priority lien in favor of the 2007 Bond Trustee for the benefit of the Bondholders (the "Entrance Fee Lien"); provided, however, that during the Chapter 11 Case, the Entrance Fee Lien shall be subject to the rights of any payor of an Entrance Fee under a Residency Agreement.

VI.     **Prohibited Use of Cash Collateral**

18.     Except as expressly provided in the Interim Order, no Cash Collateral or proceeds thereof shall be used for the purpose of:  (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Bond Collateral, the Bond Claim, or any liens or security interests with respect thereto, or any other rights or interests of the 2007 Bond Trustee therein or in the Bond Trustee Funds; (ii) asserting any claims or defenses or causes of action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond Documents, against the 2007 Bond Trustee, the Bondholders in their capacity as such, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) seeking to modify any of the rights granted to the 2007 Bond Trustee hereunder; (iv) seeking to bifurcate any claims of the Bond Trustee (outside the terms of any consent by the Bond Trustee); or (v) paying any material amounts on account of claims arising before the Petition Date, except to the extent provided for in the Cash Collateral Budget and approved by the Court.  Notwithstanding the foregoing, not more than $10,000 of the Cash Collateral may be made available to reimburse any Committee, upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the 2007 Bond Trustee's liens in the Prepetition Bond Collateral.

## VII.    Termination of Use of Cash Collateral

### A.    Termination With Notice

19.    Under the Interim Order (Interim Order, at ¶14), a Termination Event shall be deemed to have occurred five (5) business days after written notice sent by the 2007 Bond Trustee to the Debtor, its counsel, the Committee, if any, the Committee's counsel, if any, and the Office of the United States Trustee of the occurrence of any of the following (a "Termination Event"):

(i)    the payment of any expenses that would cause:  (x) aggregate expenditures under the Cash Collateral Budget to exceed one hundred ten percent (110%) of the total budgeted expenses for that same Measuring Period (as defined below), (y) expenditures under a single line item of the Cash Collateral Budget to exceed one hundred twenty percent (120%) of the amount budgeted for that same line item for that same Measuring Period but only if such line item is in excess of $20,000, or (z) expenditures under a single line item of the Cash Collateral Budget to exceed two hundred percent (200%) of the amount budgeted for that same line item for that same Measuring Period but only if such line item is less than $20,000. This variance shall be measured, on a rolling four week period (the "Measuring Period"); provided, however, that for purposes of calculating such variances, (i) the first Measuring Period shall be the one week after the Petition Date and the first week of the Cash Collateral Budget, (ii) the second Measuring Period shall be the two weeks after the Petition Date and the first two weeks of the Cash Collateral Budget, (iii) the third Measuring Period shall be the three weeks after the Petition Date and the first three weeks of the Cash Collateral Budget, and (iv) the fourth Measuring Period shall be the first four weeks after the Petition Date and the first four weeks of the Cash Collateral Budget. Any budgeted expenditures not paid in a particular budget period may be paid during a subsequent period and, for the purpose of calculating rolling four week variances set forth above, the Cash Collateral Budget will be revised to move such expenditures to the later period. Expenditures may be paid in an earlier period in the reasonable discretion of the Debtor, in which event, the Cash Collateral Budget shall be deemed amended to move the expenditure into the week of the actual expenditure for the purpose of calculating rolling four week variances set forth above. The Debtor will provide to the 2007 Bond Trustee a written explanation in reasonable detail explaining the amount of and the reason for the prepayment or delay in payment.

(ii)    the failure of the Debtor to pay, within ten (10) days of the applicable due date, all undisputed administrative expenses in full in accordance with

their terms as provided for in the Cash Collateral Budget except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

(iii)     the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930; and

(iv)     the failure of the Debtor to comply with, keep, observe or perform any of its agreements or undertakings under this Interim Order.

20.     Unless the Debtor has cured the Termination Event(s) specified in the 2007 Bond Trustee's notice prior to the expiration of the five (5) business day period (the "Default Notice Period") described in paragraph 19 above or obtained an order of the Court, on notice to and with the opportunity to be heard by the 2007 Bond Trustee, that no such Termination Event has occurred, the Debtor's authority to use Cash Collateral under the Interim Order shall terminate immediately at the expiration of the Default Notice Period.  During the Default Notice Period, the Debtor shall (x) have the right to use Cash Collateral to contest the alleged occurrence or continuation of a Termination Event, and (y) be entitled to an emergency hearing before the Court, with proper notice to the 2007 Bond Trustee, to contest the alleged occurrence or continuation of a Termination Event.  The 2007 Bond Trustee shall have the power to waive any Termination Event set forth in paragraph 19 above in its sole discretion without further order of the Court.

**B.     Termination Without Prior Notice**

21.     The Interim Order (Interim Order, at ¶15) also provides that the Debtor's authority to use Cash Collateral shall terminate without any further action by this Court, and that a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "Termination Event"):

(i)     the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

-13-

(ii)      the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application or other pleading consenting to or acquiescing in any such appointment;

(iii)      this Court suspends the Chapter 11 Case under Section 305 of the Bankruptcy Code;

(iv)      the Debtor fails to obtain approval of a disclosure statement summarizing the Plan of Reorganization on or before September 8, 2014, which date shall be subject to extension by the 2007 Bond Trustee without further order of the Court;

(v)      the Debtor fails, as required by the Plan Support Agreement, to obtain entry of an order confirming the Plan of Reorganization on or before October 24, 2014, which date shall be subject to extension by the 2007 Bond Trustee without further order of the Court;

(vi)      an order denying confirmation of the Plan of Reorganization;

(vii)      this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the 2007 Bond Trustee;

(viii)      an order is entered in the Chapter 11 Case over the objection of the 2007 Bond Trustee approving financing pursuant to Section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the 2007 Bond Trustee under this Interim Order;

(ix)      an adversary proceeding or contested matter is commenced by the Debtor challenging the amount, validity, enforceability, priority, or extent of the 2007 Bond Trustee's liens, security interests, or claims;

(x)      the Plan of Reorganization fails to become effective as of November 28, 2014 as required by the Plan Support Agreement; or

(xi)      the Court fails to enter a Final Order allowing this Motion, on terms acceptable to the 2007 Bond Trustee, on or before August 22, 2014.

Upon the occurrence of a Termination Event described in this paragraph 21, the Debtor's authority to use Cash Collateral will immediately and automatically terminate. The 2007 Bond

Trustee has the power to waive any Termination Event set forth in this paragraph 21 in its sole discretion without further order of the Court.

## VIII.    Professional Fee Carve Out

22.    In partial consideration of the Debtor's acknowledgement of the debt due and owing and the Debtor's waiver of any claims under Section 506(c) of the Bankruptcy Code (upon entry of the Final Order), the 2007 Bond Trustee consents in the Interim Order to certain expenses and professional fees incurred during the pendency of this Chapter 11 Case which shall be superior in all instances to the liens and claims of the 2007 Bond Trustee and all other parties (the "Carve Out").  For purposes hereof, the "Carve Out" means (a) the fees and expenses of professionals retained by the Debtor or a Committee, if any, in an aggregate amount not to exceed the sum of:  (i) the dollar amount of such fees and expenses to the extent (A) incurred or accrued prior to a Termination Event and remaining unpaid, (B) provided for under the Cash Collateral Budget, and (C) previously or subsequently allowed by Court order; (ii) $200,000 in fees and expenses of professionals retained by the Debtor's estate, plus (b) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court. Nothing herein shall constitute a waiver of any right of the 2007 Bond Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid.  The entry of a Final Order shall be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the 2007 Bond Trustee or the Prepetition Bond Collateral or the Collateral under Section 105 of the Bankruptcy Code or, subject to entry of the Final Order, Section 506(c) of the Bankruptcy Code, or otherwise.

## BASIS FOR RELIEF REQUESTED

### I.  The 2007 Bond Trustee Has Consented to the Debtor's Use of Cash Collateral

23.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use, sell, or lease "cash collateral" unless:

> (A)     **each entity that has an interest in such collateral consents**; or
>
> (B)     the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363].

11 U.S.C. § 363(c)(2)(A)-(B) (emphasis added).

24.     Here, the 2007 Bond Trustee, acting on behalf of the Debtor's bondholders – who are the only entities with an interest in the Cash Collateral – has consented to the Debtor's use of the Cash Collateral solely upon the terms set forth in the Interim Order.[4]  See 11 U.S.C. § 363(e).  ("[O]n request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court, with or without a hearing, shall . . . condition such use . . . as is necessary to provide adequate protection to such interest.").  Specifically, the Interim Order conditions the Debtor's use of the 2007 Bond Trustee's collateral, including the Cash Collateral, upon the provision of Adequate Protection in the form of the Replacement Lien and the Secured Party Superpriority Claim.  The Debtor submits that the terms of the Interim Order, including the Adequate Protection, are fair and reasonable and reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties, and should be approved.  See In re WorldCom, Inc., 304 B.R. 611, 619 (Bankr. S.D.N.Y. 2004) ("[N]either

---

[4] As explained in the Davis Declaration, in connection with the purchase of the outstanding Series 2007C Bonds by certain institutional holders of the Series 2007A Bonds, the Administrative Agent and the lead arranger and syndication agent under the Reimbursement Agreement assigned all of their rights, title, and interest in the Reimbursement Agreement and related documents to the 2007 Bond Trustee.

the legislative history nor the Bankruptcy Code requires the Court to protect a creditor beyond what was bargained for by the parties.").

## II.    Cause Exists to Authorize Immediate Use of Cash Collateral

25.    Bankruptcy Rule 4001(b)(2) provides that the Court may commence a final hearing on a motion to use cash collateral no earlier than fourteen (14) days after the service of such motion.  Fed. R. Bankr. P. 4001(b)(2).  Upon request, however, the Court may conduct a preliminary hearing before such 14 day period and authorize the use of that amount of cash collateral that is necessary to avoid immediate and irreparable harm to the estate.  Id.  Similarly, under Local Rule 4001-5(b), "the Court may grant interim relief on shortened notice" where "[s]uch relief is intended to avoid immediate and irreparable harm to the estate pending a final hearing."  E.D.N.Y. LBR 4001-5(b).

26.    The Debtor respectfully requests that the Court consider entry of the Interim Order at the "first day" hearing.  This preliminary, expedited relief is necessary to enable the Debtor to operate its business so as to preserve and maximize value and, therefore, avoid immediate and irreparable harm that could prejudice the Debtor's estate and, in turn, all parties in interest.  For these reasons, the Debtor also requests that the Interim Order be made effective and enforceable, nunc pro tunc, to the Petition Date, and that the Court waive the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable.  Fed. R. Bankr. P. 6004(h) (providing than an order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise).

## III.    Request for a Final Hearing

27.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that the Court schedule the Final Hearing for August 12, 2014 and approve the provisions for notice and the objection procedures set forth in the Interim Order.

## COMPLIANCE WITH LOCAL RULE 4001-5

28.     Local Rule 4001-5(a) requires that this Motion identify the location in the Interim Order of any provisions of the type listed in subsections 4001-5(a)(i)-(iii) of that rule and state the justification for the inclusion of such provisions in the Interim Order.  The Interim Order does not contain any provisions of the type listed in Local Rule 4001-5(a)(i)-(iii).

## MOTION PRACTICE

29.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion.  Moreover, in addition to all entities otherwise entitled to receive notice, the Debtor has given notice of this Motion to all entities believed to have, or be claiming, an interest in the subject matter of the Motion or who, it is believed, otherwise would be affected by the Motion.  Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1.

## NOTICE

30.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to:  (a) the U.S. Trustee; (b) counsel for the 2007 Bond Trustee; (c) the United States Attorney for the Eastern District of New York; (d) the Internal Revenue Service for the Eastern District of New York; (e) the Tax Division of the U.S. Department of Justice; (f) the Securities and Exchange Commission; (g) the Centers for Medicare and Medicaid Services; (h) the New York Department of Financial Services; (i) the New York State Department of Health; (j) the New York State Attorney General; and (k) the holders of the twenty largest unsecured claims against the Debtor.  Following a hearing on the Motion, a copy of this Motion and any order entered with respect hereto will be served on the foregoing parties and all parties having filed requests for notices in this Chapter 11 Case.  Due to

the nature of the relief requested herein, the Debtor submits that no other or further notice need be given

## **NO PRIOR REQUEST**

31.    No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter (i) the Interim Order, substantially in the form attached hereto as **Exhibit A**, and (ii) following the Final Hearing, the Final Order.

Dated:  July 22, 2014

CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ Ingrid Bagby*_____
       Ingrid Bagby, Esq.
       Christopher J. Updike, Esq.
       One World Financial Center
       New York, New York  10281
       Telephone:  (212) 504-6000
       Facsimile:   (212) 504-6666
       Ingrid.Bagby@cwt.com
       Christopher.Updike@cwt.com

       - and -

       John Thompson, Esq.
       700 Sixth Street, N.W.
       Washington, D.C.  20001
       Telephone:  (202) 862-2200
       Facsimile:   (202) 862-2400
       JohnH.Thompson@cwt.com

       *Proposed Attorneys for the*
       *Debtor and Debtor in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                   :

In re:                              :                     **Chapter 11**

**AMSTERDAM HOUSE CONTINUING CARE**   :        **Case No. 14-73348**
**RETIREMENT COMMUNITY, INC.,[1]**      :
                                                   :

                      **Debtor.**     :
-------------------------------------------------------------x

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO**
**USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;**
**(III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

This Interim Order (this "Interim Order") is entered upon the "Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief" (the "Motion"), and upon terms agreed to by and between Amsterdam House Continuing Care Retirement Community, Inc. (the "Debtor") and UMB Bank, n.a., in its capacity as successor trustee for the bonds described more fully below (the "2007 Bond Trustee"). Capitalized terms used in this Interim Order but not specifically defined have the meanings set forth in the Motion.

Upon the terms of the Motion; the stipulations, acknowledgements, and agreements of the Debtor and the 2007 Bond Trustee; the statements of the parties and their respective counsel at the hearing on the interim use of Cash Collateral (as defined below); and the record of these proceedings, the Court makes the following findings of fact and conclusions of law:

---

[1] The last four digits of the Debtor's federal tax identification number are 1764. The Debtor's mailing address is 300 East Overlook, Port Washington, New York 11050.

**The Debtor's Chapter 11 Case; Procedural Background; Jurisdiction; Notice**

A.  On July 22, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief (the "Chapter 11 Case") with this Court under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") for the purpose of confirming a pre-negotiated plan of reorganization (the "Plan of Reorganization") pursuant to which, among other things, the existing Bonds (as defined below) will be exchanged for new bonds.  Since the Petition Date, the Debtor has operated its business and managed its property as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No request has been made for the appointment of a trustee or examiner in the Chapter 11 Case and no committee of unsecured creditors has been appointed in this Chapter 11 Case under section 1102 of the Bankruptcy Code as of the date hereof (a "Committee").

B.  The Debtor is the owner and operator of a continuing care retirement community known as The Amsterdam at Harborside ("Harborside") consisting of (i) 226 independent living units, (ii) 32 enriched housing units and 18 special needs enriched housing units, (iii) 56 skilled nursing beds, and (iv) related common areas, amenities, and infrastructure.

C.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, and this matter constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.

D.  The Debtor has properly served notice of the Motion and the interim hearing thereon pursuant to Sections 102, 361, 362, and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001, and the Local Rules, which notice was sent to, among others: (i) the U.S. Trustee; (ii) counsel for the 2007 Bond Trustee; (iii) the United States Attorney for the Eastern District of New York; (iv) the Internal Revenue Service for the Eastern District of

New York; (v) the Tax Division of the U.S. Department of Justice; (vi) the Securities and Exchange Commission; (vii) the Centers for Medicare and Medicaid Services;  (viii) the New York Department of Financial Services; (ix) the New York State Department of Health; (x) the New York State Attorney General; and (xi) the holders of the twenty largest unsecured claims against the Debtor.  This notice is appropriate in the particular circumstances and is sufficient for all purposes under the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules in respect to the relief requested.

## The Debtor's Secured Bond Obligations

E.  The Debtor is obligated to the 2007 Bond Trustee for the benefit of the beneficial holders of the tax-exempt Bonds (as defined below) authorized and issued by the Nassau County Industrial Development Agency (the "Issuer") for the benefit of the Debtor.

F.  The Issuer issued its (i) $167,895,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Fixed Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2007A (the "Series A Bonds"), (ii) $8,500,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Adjustable Rate Revenue Bonds (Amsterdam at Harborside Project) Series 2007B (the "Series B Bonds"), (iii) $95,100,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Variable Rate Demand Revenue Bonds (Amsterdam at Harborside Project) Series 2007C (the "Series C Bonds") and (iv) $24,900,000 Nassau County Industrial Development Agency Continuing Care Retirement Community Variable Rate Demand Revenue Bonds (Amsterdam at Harborside Project) Series 2007D (the "Series D Bonds" and collectively with the Series A Bonds, the Series B Bonds and the Series C Bonds, the "Bonds") pursuant to that

certain Indenture of Trust (the "2007 Indenture"), dated as of December 1, 2007, between the Issuer and the 2007 Bond Trustee.

G. Proceeds from the sale of the Bonds were loaned to the Debtor pursuant to the Installment Sale Agreement, dated as of December 1, 2007 (the "Installment Sale Agreement"), between the Issuer and the Debtor, and were used by the Debtor to acquire Harborside.

H. The 2007 Indenture established various funds to be held by the 2007 Bond Trustee, including a "Debt Service Reserve Fund" and an "Entrance Fee Fund" (as each term is defined in the 2007 Indenture) (the Debt Service Reserve Fund and the Entrance Fee Fund, collectively, the "Bond Trustee Funds").[2]  As of the Petition Date, the aggregate balance of the Debt Service Reserve Fund was approximately $7,905,905 million, and the balance of the Entrance Fee Fund was approximately $4,445,874 million.  The Debtor acknowledges that the Bond Trustee Funds are held in trust for the benefit of the Bondholders and that the 2007 Bond Trustee is entitled to use the Bond Trustee Funds in accordance with the terms of the Bond Documents (as defined below).  Notwithstanding this acknowledgement, the Debtor agrees not to contest, and the Court finds, that the Bond Trustee Funds are held in trust for the Bondholders and are a part of the Prepetition Collateral (as defined below) and the Debtor further consents to a lift of the stay imposed under section 362 of the Bankruptcy Code so as to permit the 2007 Bond Trustee to exercise all of its rights in and with respect to the Bond Trustee Funds, pursuant to the Bond Documents (as defined below) and the Bankruptcy Code,

---

[2] For the avoidance of doubt, the Bond Trustee Funds do not include the Operating Reserve Fund as that term is defined in the 2007 Indenture.

subject to the terms contained in paragraph 3 herein relating to the potential access of the funds held in the Entrance Fee Fund.

I.    As of the Petition Date, the amounts due and owing by the Debtor with respect to the Bonds are as follows (collectively, the "Bond Claim"):

(i)    Unpaid principal on the Bonds in the amount of $220,570,000;

(ii)   Accrued but unpaid interest on the Bonds in the amount of $1,696,997 as of July 22, 2014; and

(iii)  unliquidated, accrued and unpaid fees and expenses of the 2007 Bond Trustee and its professionals incurred through the Petition Date. Such amounts, when liquidated, shall be added to the aggregate amount of the Bond Claim.

**Security for the Debtor's Bond Obligations**

J.    The Debtor has granted the 2007 Bond Trustee mortgage and other liens on certain real and personal property pursuant to: (i) an Acquisition Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 1, 2007, (ii) a Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 1, 2007, and (iii) a Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated as of December 1, 2007 (collectively, the "Mortgages" and together with the 2007 Indenture, the Installment Sale Agreement and any other document or agreement delivered as security for, or in respect to, the Bonds or the Debtor's obligations under any of such documents, collectively the "Bond Documents"). The Debtor also executed a Guaranty, dated as of December 1, 2007, for the benefit of the 2007 Bond Trustee to guaranty the payment of amounts owing on the Bonds. Pursuant to these grants, and subject only to the lien on the Debtor's real property securing the Debtor's obligations under that certain Payment in Lieu of Taxes Agreement, dated December 1, 2007, between the Debtor and the Issuer, the 2007 Bond Trustee holds first priority liens and security interests in

substantially all of the Debtor's real and personal property as security for its obligations associated with the Bonds including, but not limited to, revenues generated from the operations of Harborside (the "Revenues" and together with the other collateral described in the Bond Documents, the "Prepetition Bond Collateral").

**Use of Cash Collateral and Need for Adequate Protection**

K. The Debtor has requested the use of Cash Collateral (as defined below) in connection with the Chapter 11 Case to preserve the value of its business. Pursuant to the Bankruptcy Code, the Debtor is required, upon the 2007 Bond Trustee's request, to provide adequate protection to the 2007 Bond Trustee in respect of the Debtor's use of Cash Collateral. The 2007 Bond Trustee has informed the Debtor and this Court that the 2007 Bond Trustee does not consent to the use of Cash Collateral except upon the terms and conditions of this Interim Order.

L. Without the use of Cash Collateral on an interim basis, the Debtor would suffer immediate and irreparable harm pending a final hearing on the Motion and would likely be required to cease operations immediately. At a minimum, the Debtor's inability to use Cash Collateral would disrupt the Debtor as a going concern, would eliminate or significantly decrease the likelihood of confirmation of the Plan of Reorganization, and would otherwise not be in the best interests of the Debtor, its estate, or creditors, including the Bondholders and residents of Harborside. In lieu of giving the 2007 Bond Trustee relief from stay or attempting to obtain this Court's approval for use of Cash Collateral on a non-consensual basis, the Debtor wishes to provide adequate protection of the liens and security interests of the 2007 Bond Trustee in Cash Collateral and other Prepetition Bond Collateral on the terms

set forth in this Interim Order, reflecting the agreement of the Debtor and the 2007 Bond Trustee.

M.  The Debtor agrees that it shall not take any action to assert that: (i) the Bond Claim is not a valid, binding, and allowed claim against the Debtor's estate; (ii) the Bond Claim is not secured by valid, enforceable, duly perfected first priority liens on and security interests in the Prepetition Bond Collateral pursuant to the Bond Documents, and (iii) either the Bond Claim or the liens or security interests securing the Bond Claim, are subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

N.  The terms of this Interim Order are fair and commercially reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.  Good cause has been shown for the entry of this Interim Order.

O.  In negotiating the terms and conditions of this Interim Order, the 2007 Bond Trustee exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.  Furthermore, in negotiating the terms and conditions of this Interim Order, the 2007 Bond Trustee acted consistent with its duties and responsibilities under, and entry of this Interim Order does not violate, the terms of any agreement relating to the Bonds.

P.  To the extent any portion of the foregoing constitute conclusions of law, they shall constitute this Court's conclusions of law with respect to the matters so-stated.  All findings and conclusions contained in this Interim Order are subject to paragraph 22 hereof.

**NOW, THEREFORE, THE COURT HEREBY ORDERS AS FOLLOWS:**

1.    <u>Disposition</u>.  The Motion is GRANTED on an interim basis on the terms set forth in this Interim Order.  The requirements of Bankruptcy Rule 4001(b)(2) are satisfied with respect to the use of Cash Collateral on an interim and preliminary basis pending a final hearing on the Motion.  Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn, and all reservations of rights contained therein, are overruled on the merits, without prejudice, however, to any such objection or reservation of rights being reasserted in connection with the hearing on entry of the Final Order.

2.    <u>Authorization to Use Cash Collateral</u>.  The Debtor is authorized to use, as cash collateral (as defined in Section 363 of the Bankruptcy Code), any Revenues derived by the Debtor in the ordinary course of its business, all accounts receivable held by the Debtor, and all amounts currently held in the Debtor's operating accounts (the "<u>Cash Collateral</u>") until the earlier of (i) the Debtor's ability to use Cash Collateral terminates as the result of the occurrence of a Termination Event (as set forth below) or (ii) the last day included in the Cash Collateral Budget (as defined below), but only on the terms of this Interim Order.  Subject to the preceding sentence, such use of Cash Collateral shall be limited solely to the categories of expenses listed in the budget attached hereto as **Schedule A** (the "<u>Cash Collateral Budget</u>").  Further, such use of Cash Collateral shall be limited solely to pay expenses in the amounts and at the times listed in the Cash Collateral Budget; <u>provided</u>, <u>however</u>, that the Debtor shall have authority to use Cash Collateral in excess of the amounts set forth in the Cash Collateral Budget to the extent such a variance does not constitute a Termination Event described in paragraph 14(i) of this Interim Order.

3.    <u>Use of Funds in Entrance Fee Fund</u>.  The Debtor is authorized to access funds in an aggregate amount not to exceed $2,220,000 from the Entrance Fee Fund in order to satisfy any obligation of the Debtor to pay resident refunds (the "<u>Refunds</u>") that become due and owing during the Chapter 11 Case and that are required to be paid pursuant to any residency agreements (each, a "<u>Residency Agreement</u>") with the residents of Harborside, <u>provided</u> that such authorization shall be effective only after the Debtor has expended $2,350,000 from its operating revenues generated during the Chapter 11 Case and/or from funds held in its operating account to pay Refunds during the Chapter 11 Case.  Any funds advanced from the Entrance Fee Fund as contemplated by this paragraph shall be made pursuant to an Escrow Fee Fund Advance Agreement to be entered into between the Debtors and the Bond Trustee and which shall be subject to approval by the Court.   Once the aggregate amount of Refunds paid from the Entrance Fee Fund during the Chapter 11 Case equals or exceeds $2,220,000, the Debtor may pay any additional Refunds that become due and payable during the Chapter 11 Case from the Entrance Fee Fund only with the consent of the 2007 Bond Trustee, which consent is in the sole and absolute discretion of the 2007 Bond Trustee.  During the Chapter 11 Case, the Debtor shall hold in an escrow account (the "<u>New Entrance Fee Escrow Account</u>") all entrance fees ("<u>New Entrance Fees</u>") it receives under any Residency Agreement entered into on or after June 1, 2014.  The Debtor's interest in the New Entrance Fee Escrow Account and the funds therein shall be subject to a first priority lien in favor of the 2007 Bond Trustee for the benefit of the Bondholders (the "<u>Entrance Fee Lien</u>"); <u>provided</u>, <u>however</u>, that during the Chapter 11 Case, the Entrance Fee Lien shall be subject to the rights of any payor of an Entrance Fee under a Residency Agreement.

4.      Exclusion from Cash Collateral.  The Debtor is not authorized to use and shall not use any Revenues not derived in the ordinary course of the Debtor's operations.  Nothing in this Interim Order, any subsequent order concerning the extension of the use of Cash Collateral, or other order of this Court shall entitle the Debtor to use any Bond Trustee Funds (other than funds held in the Entrance Fee Fund pursuant to the provisions of paragraph 3 hereof), and no lien or other interest may be granted in the Bond Trustee Funds to any third party.

5.      Prohibited Use of Cash Collateral.  Except as expressly provided in this Order, no Cash Collateral or proceeds thereof shall be used for the purpose of: (i) objecting to, or contesting in any manner, or raising any defense to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Bond Collateral, the Bond Claim, or any liens or security interests with respect thereto, or any other rights or interests of the 2007 Bond Trustee therein or in the Bond Trustee Funds; (ii) asserting any claims or defenses or causes of action arising out of, based upon, or related to, in whole or in part, the Bonds or the Bond Documents, against the 2007 Bond Trustee, the Bondholders in their capacity as such, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, including with respect to payments made pursuant to the Bond Documents; (iii) seeking to modify any of the rights granted to the 2007 Bond Trustee hereunder; (iv) seeking to bifurcate any claims of the Bond Trustee (outside the terms of any consent by the Bond Trustee); or (v) paying any material amounts on account of claims arising before the Petition Date, except to the extent provided for in the Cash Collateral Budget and approved by the Court.  Notwithstanding the foregoing, not more than $10,000 of the Cash Collateral may be

made available to reimburse any Committee, upon appropriate application therefor, for the Committee's fees and expenses in investigating the validity, priority, perfection, and enforceability of the 2007 Bond Trustee's liens in the Prepetition Bond Collateral.

6.    <u>Amendment or Extension of Use of Cash Collateral</u>.  The Debtor may, at any time, propose to the 2007 Bond Trustee in writing (including by email) an amended Cash Collateral Budget, either for the period covered by the Cash Collateral Budget or for any period thereafter.  So long as a Termination Event (as defined below) has not occurred or is not continuing, the 2007 Bond Trustee shall not unreasonably withhold its consent to such amended Cash Collateral Budget; <u>provided</u>, <u>however</u>, that if a Termination Event (as defined below) has occurred and is continuing, the 2007 Bond Trustee may withhold its consent to such amended Cash Collateral Budget for any reason or purpose.  Upon the written consent of the 2007 Bond Trustee, the amended Cash Collateral Budget shall become the Cash Collateral Budget for purposes of this Interim Order.  At such time as the amended Cash Collateral Budget becomes the Cash Collateral Budget, the Debtor shall file a copy thereof with this Court and shall provide a copy thereof to any party in interest upon request to the Debtor's counsel.

7.    <u>Replacement Lien</u>.  As adequate protection for any diminution in the value of Cash Collateral and other Prepetition Bond Collateral resulting from the Debtor's use thereof after the Petition Date ("<u>Diminution</u>"), the 2007 Bond Trustee shall have a valid, perfected, and enforceable replacement lien and security interest (the "<u>Replacement Lien</u>") in (i) all assets of the Debtor existing on or after the Petition Date of the same type as the Prepetition Bond Collateral, together with the proceeds, rents, products, and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection,

enforceability, and priority of the liens and security interests of the 2007 Bond Trustee as of

the Petition Date (the "Postpetition Bond Collateral"); and (ii) all other assets of the Debtor of

any kind or nature whatsoever within the meaning of Section 541 of the Bankruptcy Code,

whether acquired or arising prepetition or postpetition, together with all proceeds, rents,

products, and profits thereof, exclusive of causes of action under Chapter 5 of the Bankruptcy

Code and proceeds thereof (the "Supplemental Collateral" and, collectively with the

Postpetition Bond Collateral, the "Collateral").

8.      Status of Replacement Lien.  The Replacement Lien set forth in this Interim

Order shall be in addition to all other rights of the 2007 Bond Trustee, including the 2007

Bond Trustee's liens and security interests in the Prepetition Bond Collateral.   The

Replacement Lien shall not be subject or subordinate to (i) any liens arising after the Petition

Date except for any liens or security interests in favor of any federal, state, municipal, or other

government unit, commission, board, or court for any tax liability of the Debtor, whether

secured or unsecured, including property taxes for which liability is in rem, in personam, or

both, and a tax of a kind specified in Section 507(a)(8) of the Bankruptcy Code, or (ii) any

intercompany or affiliate liens of the Debtor, or subordinated to or made pari passu with any

other lien or security interest under Sections 363 or 364 of the Bankruptcy Code or otherwise.

9.      No Further Action Required.  The approval of this Interim Order by the Court

shall be sufficient and conclusive evidence of the validity, extent, enforceability, and

perfection of the Entrance Fee Lien and the Replacement Lien granted to the 2007 Bond

Trustee, whether or not the 2007 Bond Trustee elects to file or record financing statements or

any other documents that may otherwise be required under federal or state law in any

jurisdiction, or to take such other steps as may otherwise be required to obtain, evidence, or

perfect such liens under applicable law; provided, however, that upon the request of the 2007 Bond Trustee, the Debtor shall execute such other documents as may be reasonably requested to evidence and perfect such liens; that the 2007 Bond Trustee may, in its sole discretion, but shall not be required to, file a certified copy of this Interim Order in any filing or recording office in any jurisdiction in which the Debtor has real or personal property; that the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon the 2007 Bond Trustee's reasonable request; and that such filing or recording shall be accepted and shall constitute further evidence of perfection of the 2007 Bond Trustee's liens and security interests.   No obligation, payment, transfer, or grant of security under this Interim Order shall be stayed (other than by court order in an appeal from this Interim Order), restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any otherwise applicable state law, or subject to any defense, reduction, setoff, recoupment, or counterclaim.

    10.    Superpriority Claim.  As additional adequate protection for any Diminution, the 2007 Bond Trustee shall have a superpriority administrative expense claim pursuant to Section 507(b) of the Bankruptcy Code, to the extent applicable, with recourse to and payable from any and all assets of the Debtor's estate, including but not limited to rights of the Debtor, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual that for any reason cannot be made the subject of the Replacement Lien (the "Secured Party Superpriority Claim").  The Secured Party Superpriority Claim shall be subject only to prior valid and perfected liens existing on the Petition Date and the Carve Out (as defined below) and shall have priority over any and all administrative expenses, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c) (following entry of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtor, any successor trustee, or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.    The Secured Party Superpriority Claim shall be subject to the requirements of Section 507(b) of the Bankruptcy Code.

11.    <u>Allowance of Claim and Bankruptcy Code Section 506(c) Waiver</u>.    Except as set forth in paragraph 22 below, the entry of this Interim Order by the Court shall be a conclusive and binding determination on all parties (x) as to the amount of the Bond Claim, and (y) as to the scope, extent, perfection, validity, and enforceability, in all respects, of the 2007 Bond Trustee's security interests and liens in the Prepetition Bond Collateral, including, without limitation, the Cash Collateral.    The entry of an order by the Court approving the Motion on a final basis (the "<u>Final Order</u>") shall be a conclusive and binding determination on all parties that, upon entry of the Final Order, (x) the 2007 Bond Trustee's security interests in the Prepetition Bond Collateral, including, without limitation, the Cash Collateral are not subject to any claim under Bankruptcy Code Section 506(c), and (y) that the liens and security interests of the 2007 Bond Trustee shall not be subject to any claim under Bankruptcy Code Section 552(b).

12.    <u>Financial Information</u>.   As additional adequate protection of the 2007 Bond

Trustee's security interests in the Cash Collateral, the Debtor shall allow the 2007 Bond

Trustee and its professionals and designees reasonable access, during normal business hours

and on not less than 24 hours' notice, to the premises of the Debtor in order to conduct

appraisals, analyses, and/or audits of the Prepetition Bond Collateral and the Collateral, and

shall otherwise reasonably cooperate in providing any other financial information reasonably

requested by the 2007 Bond Trustee for this purpose.  From and after the entry of this Interim

Order, the Debtor shall provide to the 2007 Bond Trustee once each week (commencing with

the second week after the Petition Date), a weekly report certified by the Debtor's chief

financial officer and in the same form as the Cash Collateral Budget indicating all receipts

received and disbursements made by the Debtor in the week ending the prior Friday compared

to the Cash Collateral Budget and detailing any variances of more than 10% and at least

$10,000 from the expenditures and receipts in the Cash Collateral Budget.  The Debtor and its

professionals shall be available once each week (subject to reasonable scheduling conflicts)

for a telephonic conference call with the 2007 Bond Trustee to discuss the status of the Plan

of Reorganization, the results of operations, and other matters pertaining to Harborside and

the Chapter 11 Case.  The Debtor shall provide to the 2007 Bond Trustee such other reports

and information as the 2007 Bond Trustee may reasonably request from time to time.

13.    <u>Compliance With Bond Documents</u>.   As further adequate protection against

Diminution, the Debtor shall comply with those terms and provisions of the Bond Documents

set forth on Schedule I attached hereto and incorporated herein.   The requirements of this

Interim Order shall be in addition to, and not in substitution for, the terms and provisions of

the Bond Documents set forth on Schedule I; <u>provided</u>, <u>however</u>, that in the event of any

inconsistency between the Bond Documents and this Interim Order, the terms of this Interim Order shall control.

14.    <u>Termination of Use of Cash Collateral With Notice</u>.  A Termination Event shall be deemed to have occurred five (5) business days after written notice sent by the 2007 Bond Trustee to the Debtor, its counsel, the Committee, if any, the Committee's counsel, if any, and the U.S. Trustee of the occurrence of any of the following (a "<u>Termination Event</u>"):

(i)    the payment of any expenses that would cause:  (x) aggregate expenditures under the Cash Collateral Budget to exceed one hundred ten percent (110%) of the total budgeted expenses for that same Measuring Period (as defined below), (y) expenditures under a single line item of the Cash Collateral Budget to exceed one hundred twenty percent (120%) of the amount budgeted for that same line item for that same Measuring Period but only if such line item is in excess of $20,000, or (z) expenditures under a single line item of the Cash Collateral Budget to exceed two hundred percent (200%) of the amount budgeted for that same line item for that same Measuring Period but only if such line item is less than $20,000. This variance shall be measured, on a rolling four week period (the "<u>Measuring Period</u>"); <u>provided</u>, <u>however</u>, that for purposes of calculating such variances, (i) the first Measuring Period shall be the one week after the Petition Date and the first week of the Cash Collateral Budget, (ii) the second Measuring Period shall be the two weeks after the Petition Date and the first two weeks of the Cash Collateral Budget, (iii) the third Measuring Period shall be the three weeks after the Petition Date and the first three weeks of the Cash Collateral Budget, and (iv) the fourth Measuring Period shall be the first four weeks after the Petition Date and the first four weeks of the Cash Collateral Budget. Any budgeted expenditures not paid in a particular budget period may be paid during a subsequent period and, for the purpose of calculating rolling four week variances set forth above, the Cash Collateral Budget will be revised to move such expenditures to the later period. Expenditures may be paid in an earlier period in the reasonable discretion of the Debtor, in which event, the Cash Collateral Budget shall be deemed amended to move the expenditure into the week of the actual expenditure for the purpose of calculating rolling four week variances set forth above. The Debtor will provide to the 2007 Bond Trustee a written explanation in reasonable detail explaining the amount of and the reason for the prepayment or delay in payment;

(ii)    the failure of the Debtor to pay, within ten (10) days of the applicable due date, all undisputed administrative expenses in full in accordance

with their terms as provided for in the Cash Collateral Budget except for any expenses under sections 503(b)(9) or 546(c) of the Bankruptcy Code;

(iii)     the failure of the Debtor to timely pay all fees due under 28 U.S.C. § 1930; and

(iv)     the failure of the Debtor to comply with, keep, observe, or perform any of its agreements or undertakings under this Interim Order.

Unless the Debtor has cured the Termination Event(s) specified in the 2007 Bond Trustee's notice prior to the expiration of the five (5) business day period (the "Default Notice Period") described in this paragraph 14 or obtained an order of this Court, on notice to and with the opportunity to be heard by the 2007 Bond Trustee, that no such Termination Event has occurred, the Debtor's authority to use Cash Collateral hereunder shall terminate immediately at the expiration of the Default Notice Period. During the Default Notice Period, the Debtor shall (x) have the right to use Cash Collateral to contest the alleged occurrence or continuation of a Termination Event, and (y) be entitled to an emergency hearing before the Court, with proper notice to the 2007 Bond Trustee, to contest the alleged occurrence or continuation of a Termination Event. The 2007 Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph 14 in its sole discretion without further order of the Court.

15.     <u>Termination of Use of Cash Collateral Without Prior Notice</u>. The Debtor's authority to use Cash Collateral hereunder shall terminate without any further action by this Court, and a Termination Event shall occur without prior notice, upon the occurrence of any of the following (also a "Termination Event"):

(i)     the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(ii)     the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in Sections 1104(c) and 1106(a)(3) and (4) of

the Bankruptcy Code) for the Debtor; or (z) the date the Debtor files a motion, application, or other pleading consenting to or acquiescing in any such appointment;

(iii)    this Court suspends the Chapter 11 Case under Section 305 of the Bankruptcy Code;

(iv)    the Debtor fails to obtain approval of a disclosure statement summarizing the Plan of Reorganization on or before September 8, 2014, which date shall be subject to extension by the 2007 Bond Trustee without further order of the Court;

(v)    the Debtor fails, as required by the Plan Support Agreement, to obtain entry of an order confirming the Plan of Reorganization on or before October 24, 2014, which date shall be subject to extension by the 2007 Bond Trustee without further order of the Court;

(vi)    an order denying confirmation of the Plan of Reorganization;

(vii)    this Interim Order becomes stayed, reversed, vacated, amended, or otherwise modified in any respect without the prior written consent of the 2007 Bond Trustee;

(viii)    an order is entered in the Chapter 11 Case over the objection of the 2007 Bond Trustee approving financing pursuant to Section 364 of the Bankruptcy Code that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to the 2007 Bond Trustee under this Interim Order;

(ix)    an adversary proceeding or contested matter is commenced by the Debtor challenging the amount, validity, enforceability, priority, or extent of the 2007 Bond Trustee's liens, security interests, or claims;

(x)    the Plan of Reorganization fails to become effective as of November 28, 2014 as required by the Plan Support Agreement; or

(xi)    the Court fails to enter a Final Order allowing this Motion, on terms acceptable to the 2007 Bond Trustee, on or before August 22, 2014.

Upon the occurrence of a Termination Event described in this paragraph 15, the Debtor's authority to use Cash Collateral hereunder shall immediately and automatically terminate. The 2007 Bond Trustee shall have the power to waive any Termination Event set forth in this paragraph 15 in its sole discretion without further order of the Court.

16.    <u>Release</u>.  Subject to paragraph 22 of this Interim Order, except for any and all obligations under the Plan Support Agreement and any other assumed contract between the Debtor and the Released Parties (as defined below), the Debtor hereby waives, releases, and discharges the 2007 Bond Trustee, all Bondholders in their capacity as such, and their respective affiliates, agents, attorneys, professionals, officers, directors, and employees (collectively, the "<u>Released Parties</u>"), from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part, the Bonds and the Bond Documents; any aspect of the prepetition relationship between the 2007 Bond Trustee and/or the Bondholders, and the Debtor; and any other acts or omissions by the 2007 Bond Trustee and/or the Bondholders in connection with either the Bond Documents or the 2007 Bond Trustee's and/or Bondholders' prepetition relationship with the Debtor.  Further, subject to paragraph 22 of this Interim Order, the Debtor waives any and all rights to object to or contest the amount of the Bond Claims or the 2007 Bond Trustee's security interest in the Prepetition Bond Collateral and agrees not to challenge that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

17.    <u>Failure of Adequate Protection</u>.  Nothing herein shall constitute a waiver, release or modification of the rights of the 2007 Bond Trustee to assert a claim under Sections 364(c) and 507(b) of the Bankruptcy Code.

18.    <u>Deemed Request for Stay Relief</u>.  This Interim Order shall be deemed to constitute a request by the 2007 Bond Trustee for relief from the automatic stay with respect to the Prepetition Bond Collateral for purposes of any request for adequate protection granted hereunder.

19.    <u>No Charge on Collateral; Carve Out</u>.  In partial consideration of the Debtor's acknowledgement of the debt due and owing and the Debtor's waiver of any claims under Section 506(c) of the Bankruptcy Code (upon entry of the Final Order), the 2007 Bond Trustee consents to certain expenses and professional fees incurred during the pendency of this Chapter 11 Case which shall be superior in all instances to the liens and claims of the 2007 Bond Trustee and all other parties (the "<u>Carve Out</u>").  For purposes hereof, the "Carve Out" means (a) the fees and expenses of professionals retained by the Debtor or a Committee, if any, in an aggregate amount not to exceed the sum of: (i) the dollar amount of such fees and expenses to the extent (A) incurred or accrued prior to a Termination Event and remaining unpaid, (B) provided for under the Cash Collateral Budget, and (C) previously or subsequently allowed by Court order; (ii) $200,000 in fees and expenses of professionals retained by the Debtor's estate, plus (b) the statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930 and the fees of the Clerk of this Court.  Nothing herein shall constitute a waiver of any right of the 2007 Bond Trustee to object to fees and expenses of any professionals or to challenge any assertion that any amount of the fees and expenses remain unpaid.  The entry of a Final Order shall be a conclusive and binding determination on all parties that, except for the Carve Out, no costs or expenses of administration shall be imposed against the 2007 Bond Trustee or the Prepetition Bond Collateral or the Collateral under Section 105 of the Bankruptcy Code or, subject to entry of the Final Order, Section 506(c) of the Bankruptcy Code, or otherwise.

20.    <u>Modification of Stay</u>.  The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby vacated and modified insofar as necessary to permit the 2007 Bond Trustee to: (i) receive payments to be made by the Debtor to the 2007 Bond Trustee for

and on behalf of the Bondholders, (ii) apply, allocate, or make payments from any of the funds or accounts maintained by the 2007 Bond Trustee (including, without limitation, the Bond Trustee Funds) in accordance with the terms of the Bond Documents, and (iii) take any action expressly authorized or contemplated by this Interim Order.  Except as otherwise provided herein, any of the aforementioned actions may be taken without further order of this Court.

21.    <u>Preservation of Rights</u>.  If any or all of the provisions of this Interim Order are, at any time, modified, vacated or stayed, such stay, modification, or vacation shall not affect the validity, extent, priority, and enforceability of any lien, priority, or other benefit conferred under this Interim Order prior to such stay, modification, or vacation.

22.    <u>Binding Effect</u>.  This Interim Order shall be binding on all creditors and parties in interest in the Chapter 11 Case, including, but not limited to, the Debtor and any successors thereto, any Chapter 11 or Chapter 7 trustee that is appointed or elected in this case, and any Committee; <u>provided</u>, <u>however</u>, that this Interim Order is without prejudice to (i) the rights of a Committee (if any) to, on behalf of the Debtor's estate, challenge the validity, amount, perfection, priority, extent, or enforceability of the Bond Claim or the prepetition security interests of the 2007 Bond Trustee (any and all claims and causes of action against the 2007 Bond Trustee, including, but not limited to, any challenge to the validity, amount, perfection, priority, extent, or enforceability of the Bond Claim or the prepetition security interests of the 2007 Bond Trustee, whether by a Committee or by any party in interest, a "<u>Challenge</u>"), so long as the Committee makes any such Challenge on or before 60 days after the date of the selection of such Committee's counsel (the "<u>Committee Challenge Period</u>"), or (ii) if no Committee has been appointed, the rights of any party in interest (other than the Debtor) to

make a Challenge on or before the date that is 75 days from the entry of the Final Order (the "Party In Interest Challenge Period"), after which Committee Challenge Period or Party In Interest Challenge Period (as applicable) all Challenges shall be deemed finally and conclusively barred; provided further that if one or more Challenges are timely made under this paragraph 22 and properly filed, then except for such Challenges, all potential Challenges are hereby deemed forever waived and relinquished.

23.    No Competing Liens.  Except as set forth herein, the Debtor shall not grant liens on, or security interests in, the Prepetition Bond Collateral or the Collateral to any other party, pursuant to Section 364 of the Bankruptcy Code or otherwise, without the consent of the 2007 Bond Trustee.  For the avoidance of doubt, this paragraph 23 does not apply to any lien arising by operation of law.

24.    Reservation of Rights.  Except as provided in this Interim Order, neither the Debtor nor the 2007 Bond Trustee waives any of its rights under the Bankruptcy Code, any applicable law, or the Bond Documents, including, without limitation, the right of the Debtor or the 2007 Bond Trustee at any time to seek any relief (or to oppose any such relief) under the Bankruptcy Code, or the right of the Debtor or the 2007 Bond Trustee to exercise any of its rights and remedies under the Bankruptcy Code at any time.

25.    Further Relief.  Nothing herein shall (i) preclude the 2007 Bond Trustee from seeking any other relief that it may deem appropriate, including relief from the automatic stay, or (ii) prevent the 2007 Bond Trustee from asserting at some later time that its liens and security interests in the Prepetition Bond Collateral are not being adequately protected.

26.    No Control.  The 2007 Bond Trustee shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person," "managing agent," or

"owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of the Debtor, notwithstanding its consent to this Interim Order or its extension of financial accommodations of any type, kind, or nature under this Interim Order.

27.    <u>No Third Party Beneficiaries</u>.  Except as expressly provided herein, no rights are created hereunder for the benefit of any third party, any creditor, or any direct, indirect or incidental beneficiary except for the Bondholders, as set forth herein.

28.    <u>Effectiveness</u>.  The rights and obligations of the parties under this Interim Order shall be effective and enforceable as of the Petition Date.  This Interim Order shall be deemed effective immediately and, for the avoidance of doubt, Bankruptcy Rule 6004(h) shall not apply hereto.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, extent, priority, or enforceability of any obligations incurred prior to the actual receipt of written notice by the 2007 Bond Trustee of the effective date of such reversal, modification, vacatur, or stay, or (ii) the validity, extent, or enforceability of the liens and claims granted hereunder.

29.    <u>Notices</u>.  All notices, requests, demands, waivers, and other communications required or permitted to be given under this Interim Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) sent by email with a next-day or overnight mail or delivery, or (c) sent by facsimile, with a confirming phone message or call to the addressee:

(a)    If to the Debtor to:

> Amsterdam House Continuing Care Retirement Community, Inc.
> Attn: James Davis
> 300 East Overlook
> Port Washington, NY 11050
> e-mail: jdavis@amsterdamnh.org

with a copy sent contemporaneously by email to:

> Cadwalader, Wickersham & Taft LLP
> Attn: Ingrid Bagby, Esq. and Christopher J. Updike, Esq.
> One World Financial Center
> New York, NY 10281
> e-mail: Ingrid.bagby@cwt.com; Christopher.Updike@cwt.com

(b)    If to the 2007 Bond Trustee to:

> UMB Bank, n.a.
> Attn: Virginia A. Housum
> Senior Vice President
> 120 Sixth Street South
> Suite 1400
> Minneapolis, MN 55403
> e-mail: Virginia.housum@umb.com

with a copy sent contemporaneously by email to:

> Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
> Attn: Daniel S. Bleck, Esq.
> One Financial Center
> Boston, MA 02111
> Fax.: 617-542-2241
> e-mail: dsbleck@mintz.com

30.    <u>Notice of Final Hearing</u>.  The Debtor shall, within two (2) business days after entry of this Interim Order, mail a notice of the entry of this Interim Order, together with a copy of the Motion and notice of the Final Hearing, to: (a) the U.S. Trustee; (b) counsel for the 2007 Bond Trustee; (c) the United States Attorney for the Eastern District of New York; (d) the Internal Revenue Service for the Eastern District of New York; (e) the Tax Division of

the U.S. Department of Justice; (f) the Securities and Exchange Commission; (g) the Centers

for Medicare and Medicaid Services; (h) the New York Department of Financial Services; (i)

the New York State Department of Health; (j) the New York State Attorney General; (k) the

holders of the twenty largest unsecured claims against the Debtor; and (l) all parties having

filed requests for notices in this chapter 11 case (the "Notice Parties").

     31.    <u>Final Hearing; Objections</u>.  A final hearing to consider the Motion will be held

on _____, 2014 at _____ __.m.  before  the  Hon._____,

Bankruptcy  Judge,  Courtroom  ___  at  the  United  States  Bankruptcy  Court,

_____, _____, New York.  Any party desiring to object to the

relief sought in the Motion on a final basis shall file a written objection with the Court on or

before _____, 2014 at 4:00 p.m. and shall contemporaneously serve that objection on

the Notice Parties so as to be received by such parties on or before such date.

Dated: _____, 2014
     Central Islip, New York

                                 _____
                                 THE HONORABLE _____
                                 UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE A

## BUDGET

**The Amsterdam at Harborside**
**Cash Collateral Budget**
As of July 21, 2014
Operating & Operating Reserve Accounts Only

| | Projected W/E 7/26 | Projected W/E 8/2 | Projected W/E 8/9 | Projected W/E 8/16 | Projected W/E 8/23 | Projected W/E 8/30 | Projected W/E 9/6 | Projected W/E 9/13 | Projected W/E 9/20 | Projected W/E 9/27 | Projected W/E 10/4 | Projected W/E 10/11 | Projected W/E 10/18 | Projected W/E 10/25 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | | | | | |
| Medicare A | $ 15,000 | $ 350,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 350,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 350,000 | $ 15,000 | $ 15,000 | $ 15,000 |
| Private Pay | 50,000 | 50,000 | 53,750 | 353,750 | 400,000 | 50,000 | 50,000 | 358,750 | 408,750 | 50,000 | 50,000 | 361,250 | 411,250 | 50,000 |
| Medicaid | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Hospice | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Other | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Total Cash Receipts** | 110,000 | 445,000 | 113,750 | 413,750 | 460,000 | 110,000 | 445,000 | 418,750 | 468,750 | 110,000 | 445,000 | 421,250 | 471,250 | 110,000 |
| | | | | | | | | | | | | | | |
| **Cash Disbursements** | | | | | | | | | | | | | | |
| Agency & Staffing Fees | - | 97,000 | 48,500 | 68,500 | 48,500 | 48,500 | 48,500 | 48,500 | 68,500 | 48,500 | 48,500 | 48,500 | 68,500 | 48,500 |
| Capital Improvements | - | 13,000 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 |
| Debt Modification Fees | - | - | - | 283,018 | 240,000 | - | - | 200,400 | 220,000 | - | - | 153,200 | 160,000 | 583,000 |
| Employee Benefits | - | 11,000 | 7,500 | 78,500 | 42,983 | 3,500 | 7,500 | 78,500 | 42,983 | 3,500 | 7,500 | 78,500 | 42,983 | 3,500 |
| Entrance Fee Refunds | 888,133 | - | - | - | - | - | 932,830 | - | - | - | - | - | 529,037 | - |
| Equipment Leases | - | 760 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 |
| Food Services | - | 56,000 | 21,000 | 21,000 | 21,000 | 35,000 | 21,000 | 21,000 | 21,000 | 35,000 | 21,000 | 21,000 | 21,000 | 35,000 |
| Insurance | - | - | - | - | - | - | - | - | 1,800 | 58,491 | - | - | - | 10,000 |
| Marketing Costs | - | 1,700 | 850 | 100,850 | 850 | 850 | 850 | 850 | 100,850 | 850 | 850 | 850 | 100,850 | 850 |
| Medical Supplies & Services | - | 18,400 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 | 9,200 |
| Office Supplies | - | 760 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 | 380 |
| Operating Supplies | - | 4,600 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 | 2,300 |
| Other Expenses | - | 16,600 | 11,800 | 8,300 | 8,300 | 8,300 | 8,300 | 11,800 | 8,300 | 8,300 | 8,300 | 11,800 | 8,300 | 8,300 |
| Payroll | - | 245,000 | - | 245,000 | - | 245,000 | - | 245,000 | - | 245,000 | - | 245,000 | - | 245,000 |
| Pharmacy | - | 10,000 | - | 28,500 | - | 10,000 | - | - | 28,500 | 10,000 | - | - | 28,500 | 10,000 |
| Phone/Internet/Cable | - | 17,000 | - | 5,000 | - | - | 17,000 | - | 5,000 | - | - | 17,000 | - | 5,000 |
| Professional Fees (Ordinary Course) | - | 35,000 | - | 163,300 | - | - | 35,000 | 163,300 | - | - | 35,000 | - | 163,300 | - |
| Refunds & Security Deposits | - | - | - | 1,000 | - | - | - | - | 1,000 | - | - | - | 1,000 | - |
| Repairs & Maintenance | - | 34,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| Resident Events & Entertainment | - | 3,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Software/IT Services | - | 2,690 | 350 | 350 | 350 | 2,340 | 350 | 350 | 350 | 2,340 | 350 | 350 | 350 | 2,340 |
| Taxes | - | - | - | 15,000 | - | - | - | - | 30,000 | 93,000 | - | - | 15,000 | - |
| Therapy Fees | - | - | - | 75,000 | - | - | - | 75,000 | - | - | - | - | 75,000 | - |
| Transportation & Security | - | 11,000 | 3,000 | 400 | 3,000 | 8,000 | 3,000 | 400 | 3,000 | 8,000 | 3,000 | - | 3,400 | 8,000 |
| Utilities | - | 5,000 | 5,000 | 87,400 | 5,000 | - | 5,000 | 87,400 | 5,000 | - | 5,000 | - | 83,400 | - |
| **Total Cash Disbursements** | 888,133 | 582,510 | 135,260 | 1,218,378 | 407,243 | 398,750 | 1,116,590 | 975,760 | 567,543 | 550,241 | 183,760 | 596,460 | 1,342,880 | 991,750 |
| | | | | | | | | | | | | | | |
| **Net Cash Flow from Operations** | (778,133) | (137,510) | (21,510) | (804,628) | 52,757 | (288,750) | (671,590) | (557,010) | (98,793) | (440,241) | 261,240 | (175,210) | (871,630) | (881,750) |
| | | | | | | | | | | | | | | |
| **Cash Rollforward** | | | | | | | | | | | | | | |
| Beginning Cash | 6,108,608 | 5,330,475 | 5,192,965 | 5,171,455 | 4,366,827 | 4,419,584 | 4,130,834 | 3,459,244 | 2,902,234 | 2,803,441 | 2,363,200 | 2,624,440 | 2,449,230 | 1,577,600 |
| Cash Increase (Decrease) | (778,133) | (137,510) | (21,510) | (804,628) | 52,757 | (288,750) | (671,590) | (557,010) | (98,793) | (440,241) | 261,240 | (175,210) | (871,630) | (881,750) |
| Sweep | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance** | $ 5,330,475 | $ 5,192,965 | $ 5,171,455 | $ 4,366,827 | $ 4,419,584 | $ 4,130,834 | $ 3,459,244 | $ 2,902,234 | $ 2,803,441 | $ 2,363,200 | $ 2,624,440 | $ 2,449,230 | $ 1,577,600 | $ 695,850 |

Notes
A. The above cash collateral budget assumes the effective date for the Plan of Reorganization occurs during the week ended October 25, 2014. To the extent the effective date occurs at a later date, we note that the anticipated average weekly cash burn is approximately $164K.**
B. No bond issuance charge ("BIC") has been included in the budget as the Debtor intends to seek a waiver of such charge or a finding of exemption pursuant to the Bankruptcy Code.

**SCHEDULE I**

Relating to Installment Sale Agreement

Section 2.3 (relating to compliance with covenants in Tax Compliance Agreement)
Section 6.1 (relating to maintenance and modifications)
Section 6.3 (relating to taxes, assessments and utility charges)
Section 6.4 (relating to insurance requirements)
Section 6.5 (relating to insurance certificate)
Section 6.7 (relating to PILOTs)
Section 8.4 (relating to corporate existence)
Section 8.10 (relating to qualification to do business)
Section 8.11 (other than Section 8.11(a)) (relating to continuing disclosure)
Section 8.12 (relating to compliance)
Section 8.17 (relating to continuing care obligations)